## LUCY A. STONE

. *v.*

## JAMES VANDERMARK *et al.*

*Filed at Mt. Vernon May 8, 1893.*

1. WILLS—DOWER—*devise to bar dower.* A devise of real estate by a testator to his widow, to be used and enjoyed by her so long as she shall remain his widow, is such a devise in lands, within the meaning of section 10 of the Dower act, as will bar the widow's dower, unless otherwise expressed in the will; but the widow has the right to elect to take under the will, or renounce its provisions and take under the statute.

2. SAME—*widow's election as to dower —when it must be exercised.* Under section 11 of the Dower act, a widow, to whom land is devised by her husband, will be under no obligation to make an election whether to take under the will or the statute, until letters testamentary or of administration shall have been issued ; and after the issue of such letters she can make her election at any time she sees proper, within one year from the date of the letters. The widow is entitled to know the condition of the estate before making her election. But the time thus given to the widow may be waived, so that if the widow, with a knowledge of all her rights, elects to take under the will, she will be bound by such election.

3. The general rule is, that a party is not bound to make any election between rights until all the circumstances are known and the state and condition and value of the fund or property are clearly ascertained, as, until then, it is impossible for the party to make a discriminating and deliberate choice.

4. SAME—*widow's right of election to take under the will—facts showing an exercise of the right.* A testator by his will gave his widow all his personal property, and certain land to be used by her during her widowhood. She was present when the will was read, and appeared satisfied with it. Upon the testator's death she took possession of the personal property and went into possession of the farm, and received the rents and profits thereof. The personal property, however, did not amount to more than her specific allowance, if it had been set off to her. The farm so occupied by her was the homestead, which she had a right to occupy until it was set off to her : *Held,* that these facts were not sufficient to show an election of the widow to take under the will. So, too, loose expressions made by the widow, that she had accepted property under the will and that it was just as she wanted it, are not sufficient to show such an election, there being nothing to require her to make the election.

APPEAL from the Circuit Court of Lawrence county; the Hon. CARROLL C. BOGGS, Judge, presiding.

Messrs. GEE & BARNES, for the appellant:

The appellant was not barred by electing to take under the will. Rev. Stat. chap. 41, secs. 10, 11; chap. 3, sec. 76; chap. 34, sec. 11.

A purely voluntary acceptance can not be enforced. The acceptance must be in the manner pointed out by the statute. *Ward* v. *Ward,* 134 Ill. 417.

The statute did not run against appellant until notice was given her. *Howard* v. *Watson,* 76 Iowa, 229.

A homestead right can only be relinquished by statutory mode or abandonment. *McMahill* v. *McMahill,* 105 Ill. 596; *Kingman* v. *Higgins,* 100 id. 319; *McGee* v. *McGee,* 91 id. 553.

Re-marrying does not affect the homestead. *Moore* v. *Flynn,* 135 Ill. 74.

A husband can not devise his homestead so as to prevent its passing, by operation of law, to his widow and minor children. *Rockley* v. *Rockley,* 97 Mo. 76.

Messrs. HOFFMAN & HOFFMAN, for the appellees:

Where a testator devises certain property to his widow in lieu of dower and homestead, and she accepts the devise, she can not claim an estate of homestead. And it is not necessary that the devise should expressly show it is in lieu of homestead. It is sufficient if such intent is plainly manifested. *Cowdry* v. *Hitchcock,* 103 Ill. 262.

Mr. JUSTICE CRAIG delivered the opinion of the Court:

This was a bill brought by Lucy A. Stone, to recover dower and homestead in certain lands in Lawrence county, of which her husband, Cyrus Vandermark, died seized in 1886. The children of Cyrus Vandermark, and Joseph Gray, guardian of such of the children as were minors, were made defendants to

the bill. The defendants put in an answer to the bill, and also filed a cross-bill, in which they set up that the complainant had accepted the provisions of the will of her deceased husband, and that, under the will, she was not entitled to either dower or homestead in the premises. The defendants, therefore, in their cross-bill, prayed for a partition of the premises among themselves. The cause proceeded to a hearing, on the pleadings and evidence, and the court rendered a decree dismissing the bill, and decreed in favor of the complainants in the cross-bill. To reverse this decree the complainant in the bill appealed.

Under the second clause of Cyrus Vandermark's will, after providing for the payment of debts, the testator gave to his wife, Lucy A. Vandermark, all the personal property of which he was possessed at the time of his death, to be disposed of as she might think proper, while she remained his widow. The third clause was as follows:

"I give and bequeath to my wife, also, all the real estate of which I may die possessed, to be used and controlled by her, the rents and profits to be derived from the same to be used and enjoyed by her while she may remain my widow, in caring for herself and children, and after her death, or when she shall again marry, then said real estate shall be equally divided between her children, Cyrus H., Martha E., Anna M., Omer G. and Lewis Vandermark, or such number of them as may be living; and this division shall also include any personal property then remaining in her possession. I also give and bequeath to my son, James W. Vandermark, all my interest in and to the following real estate, viz: The N. E. quarter of section No. three (3), in township No. (2), north, range No. twelve (12), west, in Lawrence county, Illinois, subject, however, to the will of my father, James Vandermark."

Following this provision was a clause appointing Joseph Gray executor. On the 15th day of November, 1886, the will was presented to the county court of Lawrence county, proof

made of the death of Cyrus Vandermark, and the will admitted to probate. No letters testamentary ever issued. After the death of the testator the widow continued to reside on the farm owned by the deceased at the time of his death, consisting of one hundred and seventy-eight acres in Lawrence county, described as follows: The north-east quarter of section 34, township 3, range 12, west of the second principal meridian, except twelve acres off the south-east corner of said quarter, which had been deeded to his son, John Vandermark; also, thirty acres off the east side of the north-west quarter of section 34, township 3, range 12, west. The personal property, amounting to $1500, passed into the widow's hands, and from the proceeds she furnished the executor money to pay the debts, which amounted to about the sum of $80. After residing on the farm for about two years the widow leased it to a Mr. Price, and moved to Sumner, a small town in the neighborhood. On the 8th day of May, 1890, she married L. P. Stone, but they only resided together for a short time, when Stone deserted her. After Price's lease expired she returned to the farm, where she still resides.

Under the facts appearing in the record, it is insisted, on the one hand, that the widow has not elected to take under the will of her husband, and hence she is entitled to dower and homestead in the farm in controversy; while, on the other hand, it is claimed that the widow elected to take under the will, and upon her marriage, by the terms of the instrument, all estate she acquired in the testator's lands terminated, and her children, the complainants in the cross-bill, are entitled to a division.

Section 10 of the Dower act (1 Starr & Curtis, 901,) provides: "Any devise of land or estate therein, or any other provision made by the will of a deceased husband or wife for a surviving wife or husband, shall, unless otherwise expressed in the will, bar the dower of such survivor in the lands of the deceased, unless such survivor shall elect to, and does, re-

nounce the benefit of such devise or other provision, in which case he or she shall be entitled to dower in the lands, and to one-third of the personal estate after the payment of all debts."

The devise of the real estate possessed by the testator at the time of his death, to appellant, to be used ·and enjoyed by her while she remained his widow, was the devise of an estate in lands, within the meaning of the section of the statute *supra,* and by the terms of the section such a devise will bar dower, unless otherwise expressed in the will. But the widow had the right to elect to take under the will, or renounce its provisions and take under the statute. Section 11 of the Dower act provides: "Any one entitled to an election, under either of the two preceding sections, shall be deemed to have elected to take such jointure, devise or other provision, unless, within one year after letters testamentary or of administration are issued, he or she shall deliver or transmit to the county court of the proper county a written renunciation of such jointure, devise or other provision." Under this section of the statute the widow was under no obligation to make an election whether she would take under the will or the statute until letters testamentary or of administration had been issued, and after the issue of such letters she could make her election at any time she saw proper, within one year from the date of letters. It would be manifestly unjust to require a widow to make her election before she had accurate and reliable information in regard to the condition of the estate, and the legislature no doubt had this fact in view when the section was framed giving the widow one year after the issue of letters to make her election.

Under section 51, chapter 3, of the statute entitled "Administration of Estates," it is provided that when letters are granted, the executor or administrator shall make out and file, within three months, a full inventory of the estate of the deceased; and section 60 requires the administrator or executor to fix upon a day, within six months, when and where

all claims may be presented to the court and adjusted. Other sections authorize appraisers to be appointed when letters are granted, who appraise the property and fix upon the amount of the widow's award.

Under these provisions of the statute, which it is the duty of the county or probate court to require the executor or administrator to strictly follow, a widow of a deceased person can, within one year from the grant of letters, obtain accurate and full information in regard to the condition of the estate, and thus be enabled to determine whether she will take under the will or under the statute. Here, no letters ever issued. Indeed, no steps whatever were taken to settle the estate, except that the will was proved and admitted to probate. No inventory was filed and no opportunity given creditors to present claims for adjustment. Unless this was done, or until it was determined in some legitimate manner what debts were existing against the estate, the condition and value of the estate left by the deceased could not be known, and the widow was in no position to be called upon to make an election.

But while the statute confers upon the widow the right to make an election at any time within one year after the grant of letters, the time thus given may be waived, and if the widow, with a knowledge of all of her rights, elected to take under the will, she would be bound by such an election. In Story's Equity Jurisprudence (sec. 1098) the author, in speaking on the question of an election, says: "Questions have also arisen in courts of equity as to the time when and the circumstances under which an election may be required to be made. The general rule is, that the party is not bound to make any election until all the circumstances are known and the state and condition and value of the funds are clearly ascertained, for until so known and ascertained it is impossible for the party to make a discriminating and deliberate choice, such as ought to bind him in reason and justice."

Keeping this rule in view, did the widow elect to take under the will, as is claimed by appellees? It was proven that the will was read to the widow after it was written, and she knew its contents and was satisfied with it. But we do not regard this as a controlling fact, as she could not be in a position to determine whether she desired to accept the provisions of the will or take under the statute, unless she knew the condition of the estate. It was also proven that upon the death of her husband she took possession of and retained the personal property, and remained in possession of the farm, receiving the rents and profits. As to the personal property, if it had been appraised, as required by statute, and her specific allowance fixed, as required, she would have been entitled to the most, if not all, of the personal property on her specific allowance. As to the possession of the farm, at the time of the testator's death it was his residence and homestead. Section 1 of the Homestead act provides, "that every householder having a family shall be entitled to an estate of homestead, to the extent in value of $1000, in the farm or lot of land and buildings thereon, \* \* \* and occupied by him or her as a residence." Section 2 provides: "Such exemption shall continue, after the death of such householder, for the benefit of the husband or wife surviving," etc. The widow, as survivor of the testator, was entitled to occupy the farm as a homestead, for the support of herself and children, the appellees herein, until such time, at least, as she might accept the provisions of the will, or until her homestead might be set off or assigned, as provided by law. There is therefore as much reason for holding that the occupancy and use of the farm was as widow, as there is for holding that appellant occupied as devisee.

There is also evidence that the widow, after her second marriage, told the executor that she had accepted the personal property under the will, and to another witness she said the will was as she wanted it. These loose expressions of the

widow can not be regarded sufficient to establish the fact that she, with a full knowledge of the condition of the estate, and her rights under the will and the statute, had released her right to relinquish the provisions of the will, and had actually accepted the provisions made for her by the will. There was also evidence tending to prove an attempted leasing of the farm after the marriage, to appellant and her second husband, by the guardian of appellees; but the appellant never occupied under the lease, but has all the time held the farm in the same manner that she did when she was left upon it by the death of her husband.

These are the principal facts relied upon to establish an acceptance by the widow of the provisions of the will, and while they tend to prove an acceptance, we do not regard them sufficient to establish the fact. Had appellees or their guardian desired to settle the question whether the widow accepted the provisions of the will or whether she desired to take under the statute, they had the power within their own hands, by causing letters testamentary to issue. Had this course been pursued and letters issued, within one year from that date the widow would have been compelled to renounce the provisions of the will, otherwise she would have been held to have accepted its provisions, and thus the matter would have been definitely settled.

The decree of the circuit court will be reversed, and the cause remanded for further proceedings consistent with this opinion.

*Decree reversed.*